## Case No. 4,530.

### In re ESS et al.

[3 Biss. 301; 7 N. B. R. 133; 4 Chi. Leg. News, 357; 20 Pittsb. Leg. J. 34; 2 Md. Law Rep. 353; 1 Am. Law Rec. 356; 6 Alb. Law J. 277; 6 West. Jur. 447.] [1]

Circuit Court, N. D. Illinois. July, 1872.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 6 Alb. Law J. 277, contains only a partial report.]

Rich & Noble, for creditors.
L. S. Hodges, for bankrupts.

BLODGETT, District Judge. The trial was had upon the issue made by the denial of Clarendon, on which it appeared in evidence that some time in the year 1866 Clarendon, who was then a resident of New York City, and engaged in the wholesale boot and shoe business in said city, wrote to Jacob Ess, who was at that time living in Memphis, proposing to unite with Ess in business; Clarendon to furnish the goods, and Ess to manage the business of a retail store in some place which they might select in the West. After some correspondence it was agreed that Ess should start the store at Peoria, and that Clarendon should furnish him with the goods for stocking the store. In a letter of December 27, 1866, from Clarendon to Ess, Clarendon uses this language: "Now I have to say to you, that if you act to me like a brother, I will do as well for you as I have done for my brothers. The way I have always done with them was, that I bought the goods and they sold them, and they took half the profits and I took the other half. If this meets your ideas we will put the thing through." In a letter of January 23d, 1867, Clarendon writes: "Don't be afraid of any of them in the shoe business, for I know I can skin them on buying. I will make the profits right. You need not let on that your partner is in the shoe business until you see how it will work. I think you had better make the name of the concern Jacob Ess & Co., and if you will only sell the goods I am certain I can buy them, and if you are going all right I may come out to see you next summer." Again, in the same letter, he says: "If you could send the money when you order the goods, it will give my folks here a better opinion of the business. I am not going to let them know that I am in with you; but I guarantee that you will pay for them, and I will see that the goods are charged to you at small profits." Under date of February 9th, 1867, Clarendon writes to Ess: "In writing let me know every day's sales. I will do the very best I can to put the goods at low figures. I have put most of these at cost." This was after Ess had opened the store at Peoria. On March 2d, Clarendon writes to

Ess: "Write to me twice a week, and at the end of the month send me a statement of what you have sold during the month, and what you have done with the money. Keep your books straight." In a subsequent letter Clarendon writes to Ess: "If you have not got your sign yet, have it Jacob Ess. I will send the goods in your name from here."

A large number of other letters were introduced and read upon the trial, but the quotations I have made already show clearly enough to my mind that a partnership was entered into between Ess and Clarendon, and that, by Clarendon's especial request and direction, the business was to be done in the individual name of Jacob Ess. Ess testifies that, sometime in 1869, Clarendon told him that he thought they had now got on far enough so that he (Ess) could pay him (Clarendon) fifty dollars per month for the profits of the concern. Ess demurred to this, stating that they had not yet reached the point where Clarendon's share of the profits would amount to that, but agreed to send Clarendon all the money he could spare from the business; and, accordingly, during the year 1869 and part of the years 1870 and 1871 Ess remitted to Clarendon various sums of money, amounting in all to between $700 and $800, to apply upon the profits of the business. During this time, Clarendon changed his business relations in New York, the firm of which he had been a member having dissolved, and, sometime in 1870, Clarendon commenced purchasing goods on account of Jacob Ess from the firm of Mabie, Murray & Morgan, in New York, Clarendon guaranteeing the payment of the bills. It also appears, however, that Ess purchased of other dealers in the same line of goods, and it does not appear that Clarendon in all cases guaranteed the payments, although Ess testifies that he notified his creditors and those with whom he dealt, as a rule, that Mr. Clarendon was his secret partner. Ess also testifies that the notes described in the petition were given in due course of business to the firm of Mabie, Murray & Morgan, and that at the time mentioned in the petition, to-wit, as those notes respectively fell due, the said firm suspended payment thereof, and that on or about the first of March last, all of said notes remained unpaid. There was no evidence of a dissolution of the firm or of any change in the relations of the partners. It was proved by the petitioners that Ess, at the time of purchasing the goods of them, told them that Clarendon was a partner in the business.

The only evidence interposed on the part of the defense is that of the respondent William Clarendon, who testifies that, about the first of March last, he paid the notes to Mabie, Murray & Morgan, described in the petition, and took them up, he being liable thereon as guarantor.

The evidence on file in the case, and on

which the rule to show cause was granted, shows that Jacob Ess was indebted to the petitioning creditors for goods sold them in the due course of their business· to the amount named in the petition, to-wit: $2,724.28.

It is contended on the part of the respondent, Clarendon, that inasmuch as he had paid the commercial paper described in the petition prior to the filing of said petition, that this proceeding cannot now be maintained.

Assuming, as I do, that the proof shows that Clarendon was a partner with Ess in business at Peoria, the question is, have the petitioners, Weber & Co., the right to avail themselves of the act of bankruptcy, which was committed by said firm by suspending payment of its commercial paper, to-wit: the Mabie, Murray & Morgan notes, and to have the firm and its members declared bankrupts, notwithstanding said paper had been paid and taken up prior to the filing of the petition in this case?

There can be no doubt that the suspension upon this paper for fourteen days was an act of bankruptcy, and· as much against Clarendon as against Ess, if Clarendon was a member of the firm. And if it were an act of bankruptcy, is that condoned or so far defeated as to prevent any other creditor from availing himself thereof by the mere payment of the suspended paper? If a merchant or trader suspends payment of his commercial paper for fourteen days, that is an act of bankruptcy of which any creditor may avail himself. The act of suspension raises a presumption of insolvency and makes the party guilty thereof a proper subject for proceedings in bankruptcy. It is not enough that the debtor shall pay his suspended paper alone. He must pay. or settle all his debts and satisfy all his creditors, if he would wipe out the offense against his commercial standing, committed by the suspension.. Otherwise a trader might, although hopelessly insolvent, avoid adjudication as a bankrupt by the payment of a tithe of his indebtedness, because, as a rule, but a small proportion of a trader's indebtedness is evidenced by commercial paper. I conclude, then, that William Clarendon and Jacob Ess were, at the time of the filing of this petition, partners in business under the firm name of Jacob Ess, at Peoria, in this district; that they were guilty of the acts of bankruptcy charged in the petition; and that the petitioning creditors had the right to avail themselves of that act of bankruptcy, although the suspended paper had been taken up by one of the partners at the time of the filing of the petition.

The finding of the court, therefore, is that William Clarendon was guilty with the said Jacob Ess of the act of bankruptcy charged in the petition, and that he and the said Jacob Ess must be adjudicated bankrupts.